LARRY BARNGROVER, DUANE ERICKSON, KENNETH GRAY AND WILLIAM MOLINI, PETITIONERS, v. THE FOURTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ELKO, AND THE HONORABLE J. MICHAEL MEMEO, DISTRICT JUDGE, RESPONDENTS, AND THE ELKO COUNTY GRAND JURY, REAL PARTY IN INTEREST.

No. 32433

June 7, 1999                           979 P.2d 216

*Frankie Sue Del Papa,* Attorney General, and *Paul G. Taggart,* Deputy Attorney General, Carson City, for Petitioners.

*Gary D. Woodbury*, District Attorney, Elko County, for Respondents.

# OPINION

*Per Curiam:*

## FACTS

In 1991, Independence Mining Company ("IMC") applied for a permit from the United States Forest Service ("USFS") to expand its gold mining activities on public lands in the Independence Mountain range. As a part of the permit procedure, the Nevada Division of Wildlife ("NDOW") worked with the Forest Service to determine whether or not the requested use would negatively impact wildlife in the area. Where a negative impact is anticipated, the applicant is required to pay the costs of mitigating the damage caused by the applicant's use of the property. A dispute arose between IMC, NDOW and USFS over the amount of money IMC would pay in mitigation. The entities also disagreed about the manner in which NDOW and USFS calcu-

lated the damages as well as the impact of the mining operation on the mule deer habitat which was located in the proposed mining area.

Petitioners Larry Barngrover ("Barngrover"), Duane Erickson ("Erickson"), Kenneth Gray ("Gray"), and William Molini ("Molini") are the employees of NDOW who were involved in the determination of damages and/or the negotiations with IMC.

The discussions regarding mitigation damages occurred in 1991 and 1992. IMC had informed NDOW and USFS that the permit was essential to the continued operation of IMC's business as IMC was close to exhausting its resources at its existing sites. IMC was concerned that a substantial loss of revenue might result if it could not resolve the mitigation issue.

After the protracted negotiations failed to result in an agreement, the parties were scheduled to proceed with mandatory arbitration. However, rather than arbitrate the issue, IMC and NDOW decided to agree upon a settlement which required that IMC pay the State of Nevada $500,000 in mitigation costs. The money would be placed in a fund to be administered by NDOW, and NDOW would be responsible for the mitigation plan management. The settlement was approved by the Nevada Legislature, and IMC made the last payment towards the $500,000 in July of 1994.

On September 18, 1995, a petition was filed with the Fourth Judicial District Court pursuant to NRS 6.130(1). The petition requested that the court summon a grand jury to investigate the actions of federal and state officials with regard to the management of public lands located in Elko County.[1] The IMC transaction was one of the issues which prompted the petition. IMC, however, had never complained about the transaction. The petition was granted, and on February 7, 1996, a grand jury was impaneled.

The grand jury met for about one year. With respect to the IMC mitigation settlement, it heard testimony from numerous witnesses, including petitioners Barngrover, Erickson and Gray. Deputy Attorney General Wayne Howle, counsel for NDOW, asked District Attorney Gary Woodbury to indicate whether or not employees of NDOW were targets of a criminal investigation pursuant to NRS 172.241(2) and Sheriff of Humboldt County v.

---

[1]The petition is part of a long-running dispute over the management of public lands. Some residents of Elko County have expressed dissatisfaction with the manner in which public lands are managed because federal and state regulations affecting these lands can have a significant impact upon Elko County's economy and resources. The petition alleged there was "collusion between employees and officials of the United States Forest Service, preservation groups, and possibly State officials . . . the effects of which are to severely limit, obstruct, or terminate all economic and recreational activity on public lands in Elko County."

Marcum, 105 Nev. 824, 783 P.2d 1389 (1989). Woodbury told Howle that the petitioners were not targets. Therefore, Barngrover, Erickson and Gray testified under the assumption that the grand jury was not seeking to indict any NDOW employee, but was on a fact finding mission.

After concluding its hearings on the IMC transaction, the grand jury believed that petitioners and members of the USFS had somehow conspired to coerce IMC into an unfair settlement. The grand jury felt the actions of these governmental entities violated NRS 197.200, oppression under the color of office, a gross misdemeanor.[2]

On January 9, 1997, the grand jury issued a document called "Report of Investigation." No indictment or presentment accompanied the report. The report was critical of the manner in which the IMC issue had been resolved. The form of the report suggested it was submitted under NRS 172.267, but it also contained language arguably in violation of subsections 2(a) and 2(c) of that act.

Specifically, under the findings portion of the report, the grand jury listed petitioners by name and indicated what role the grand jury believed a given individual had played in the IMC transaction. Then, in the section entitled "Recommendations," the grand jury concluded that indictable criminal activity had taken place which, but for the fact that the statute of limitations had passed on the alleged violations, would have resulted in a recommendation for prosecution. The report then stated that "employees of NDOW deliberately and maliciously withheld and delayed issuance of permits to which IMC was entitled in order to force IMC to pay sums of money for habitat development" beyond that which "IMC was legally or morally obligated to pay."

The "Report of Investigation" was sent to the judges of the Fourth Judicial District Court on January 10, 1997. A cover letter from District Attorney Woodbury was attached. The letter stated:

---

[2]NRS 197.200(1) states:

> An officer, . . . who unlawfully and maliciously, under pretense or color of official authority:
> (a) Arrests another or detains him against his will;
> (b) Seizes or levies upon another's property;
> (c) Dispossesses another of any lands or tenements; or
> (d) Does any act whereby another person is injured in his person, property or rights, commits oppression.

The statute was designed to address civil rights violations, and its application to employees of NDOW on the basis of the grand jury testimony in this case is doubtful at best.

I want to call your attention to the fact that the report names several individuals, and indicates that indictable activity was found, and but for the passage of the statute of limitations, an indictment would issue.

Pursuant to NRS 172.267, there are several subsections which appear to be safeguards against unfair accusations against named individuals. The Grand Jury is specifically requesting that you treat the report as a presentment pursuant to NRS 172.267(2)(c).

I am specifically requesting you to find, pursuant to NRS 172.285, that a warrant cannot issue because of the passage of the statute of limitations.

Upon receipt of the letter and the report, the district court noted that the district attorney had confused the role of the grand jury in this instance. The report could not be treated as a "presentment" as requested in the letter, and the report, standing alone, did not comply with NRS 172.267. By letter of February 3, 1997, the district court requested that the grand jury clarify its position. The district court stated:

I would request that the Grand Jury clarify its action by either returning a presentment(s) in a separate document(s) suitable for filing with the Court that specifically names the individual to be charged along with the specific criminal statute that has been violated, or otherwise informing the Court as to its intent.

If the Grand Jury returns presentments . . . the Court will immediately set a hearing for the return of the presentment(s) in open court . . . .

If the Grand Jury does not accompany the report with a presentment(s), the Court will afford those individuals named but not formally accused the opportunity for expungement as required by NRS 172.271 . . . .

This, in effect, advised the grand jury that they could either press charges or amend the report so that it met the standards of NRS 172.267.

Although the report and the letter of the district attorney both stated that criminal charges would not be pursued due to the expiration of the statute of limitations, the grand jury still went forward with a presentment. On the day the presentment was filed, February 13, 1997, the district attorney asked the district court not to issue a bench warrant and stated the case could not proceed as any alleged criminal charges were barred by the statute of limitations. The district attorney said the alleged offense "does not constitute an action triable within Elko County." The district court took the matter under advisement and requested the district

attorney to file points and authorities in support of his position regarding the statute of limitations issue. After reviewing the brief of the district attorney's office, the district court issued, on March 10, 1997, an order stating no further action would be taken on the presentment.

Petitioners were never served with a copy of the presentment or the report. They were informed of the proceedings by reading accounts of the matter in various newspapers. On May 15, 1997, after learning of the existence of the presentment, petitioners filed a motion for an order directing the grand jury court reporter to certify and file a transcript of the grand jury proceedings as required by NRS 172.225. The district court granted the motion, but limited the order to "all witnesses relied upon by the grand jury in returning the Presentment." Petitioners requested the district court expand its order to include all of the grand jury proceedings by a motion filed on August 28, 1997. This motion was opposed by the district attorney's office and denied by the district court on December 9, 1997.

Petitioners then filed a motion to expunge the presentment and grand jury report, as well as a motion for reconsideration of the district court's denial of additional transcripts. These motions were denied on March 3, 1998.

Petitioners filed a direct appeal with this court. Respondents moved to dismiss the appeal on jurisdictional grounds. While the motion was pending, petitioners filed the instant extraordinary writ action.[3]

## DISCUSSION

The decision to entertain a petition for a writ lies within the discretion of this court. *See* Barnes v. District Court, 103 Nev. 679, 682, 748 P.2d 483, 485 (1987). A writ of mandamus is an extraordinary remedy and may be available to prevent irreparable harm. *See* Clark County Liquor v. Clark, 102 Nev. 654, 659, 730 P.2d 443, 447 (1986). The writ is issued to "compel the performance of an act which the law especially enjoins as a duty" and where the petitioner has "no plain, speedy and adequate remedy at law . . . ." Wardleigh v. District Court, 111 Nev. 345, 350,

---

[3]This court dismissed the direct appeal on February 1, 1999, concluding that the issues presented would be most appropriately and expeditiously addressed in the context of the instant writ petition. This court expressed no opinion as to its jurisdiction to entertain the appeal. *See* Ashokan v. State, Dep't of Ins., 109 Nev. 662, 856 P.2d 244 (1993) (despite the availability of an adequate legal remedy, this court may exercise its constitutional prerogative to entertain a writ petition where circumstances reveal urgency and necessity).

891 P.2d 1180, 1183 (1995). As noted, however, despite an available legal remedy, this court may exercise its discretion to entertain a petition for mandamus relief where the circumstances reveal urgency and strong necessity. *Ashokan,* 109 Nev. at 667, 856 P.2d at 247. We have concluded that strong necessity warrants this court's intervention by way of extraordinary relief in this case.

I.   *Role of Grand Jury*

This court has long recognized the dual roles played by grand juries in our system of government: (1) reporting on matters involving the operation of government and (2) making accusations of possible criminal conduct. The two functions are distinct and are not intended to be mixed. Biglieri v. Washoe Co. Grand Jury, 95 Nev. 696, 601 P.2d 703 (1979). In *Biglieri,* the court noted that:

> The reportorial function of the grand jury, serving to enlighten the community on matters of public importance, occupies an important position in our democratic form of government. We must be on our guard, however, to distinguish between the grand jury's power to report upon public affairs and its power to accuse of public offenses. In re Ormsby Grand Jury, 74 Nev. 80, 322 P.2d 1099 (1958). When singling out an individual through accusations of possible criminal conduct, the grand jury acts as an inquisitor; in its inquisitorial role, the grand jury must either indict or be silent. *Id.*; NRS 172.175(3).

*Biglieri,* 95 Nev. at 699, 601 P.2d at 705.

Although *Biglieri* speaks of indictments, the same is true of a presentment. A presentment is simply a criminal accusation initiated by the grand jury itself, as opposed to an accusation requested by a prosecutorial agency. Black's Law Dictionary 1184 (6th ed. 1990). NRS 172.005(2) defines a presentment as:

> [A]n informal statement in writing, by the grand jury, representing to the court that a public offense has been committed, which is triable within the district, and that there is reasonable ground for believing that a particular person, named or described, has committed it.

A presentment is merely a different method of instigating criminal proceedings. Once filed, if sufficient upon its face, a warrant is issued. When the person accused in the presentment is brought

before the court to answer the charges, he or she is entitled to then challenge the validity of the presentment in the same manner as if an indictment or criminal complaint had been filed. If a judge finds there is probable cause to support the charges, then the person is bound over for trial; otherwise the charges are dismissed. NRS 172.285(3). "Under Nevada law a presentment of public offense contemplates *trial* and not merely notice to the offender." In re Ormsby Grand Jury, 74 Nev. 80, 84, 322 P.2d 1099, 1101 (1958).

In contrast to a presentment or indictment, when a grand jury reports on a public matter, no trial or criminal proceedings are contemplated. The report is issued for the purpose of advocating for executive or legislative branch changes. When no prosecutorial action will be taken, grand juries are prohibited from including accusations against individuals in their reports. *See* NRS 172.267 and 172.271.[4] As stated by the court in *Ormsby:*

> The principle is that a man should not be made subject to quasi-official accusation of misconduct which he cannot answer in an authoritative forum; that in making such accusation the grand jury is exceeding its reportorial function and is proceeding to impose the punishment of reprimand based upon secret ex parte proceedings in which the person punished has not been afforded the opportunity of formal open defense.

*Ormsby,* 74 Nev. at 83, 322 P.2d at 1100. Where a grand jury's actions violate NRS 172.267, expungement is the appropriate remedy. In re Report Washoe Co. Grand Jury, 95 Nev. 121, 590 P.2d 622 (1979).

---

[4]NRS 172.267(2) states, in part:

> The report must be issued for the sole purpose of reporting on the matter. The report must not:
> (a) Contain material the sole effect of which is to ridicule or abuse a person or otherwise subject him to public disgrace or embarrassment;
> . . . .
> (c) Accuse a named or unnamed person directly or by innuendo, imputation or otherwise of an act that, if true, constitutes an indictable offense unless the report is accompanied by a presentment or an indictment of the person for the offense mentioned in the report.

NRS 172.271 mandates that the court review draft reports of a grand jury and notify persons named in a draft in violation of NRS 172.267(2)(b) of the inclusion of their name in the draft. It also sets forth the procedure for a person to ask for their name or identifying information to be expunged from the report before it is made public.

## II. *Motion to Expunge*

Normally the remedy of expungement is not available in a pre-sentment context. As noted by the district court in its order denying the motion to expunge, NRS 172.255(3) provides that once a grand jury decides it will issue a presentment, then it must be returned in open court. A challenge to the sufficiency of the presentment is made under NRS 172.285(3) through a preliminary hearing or motion to dismiss. The statutes do not contemplate, and the law does not require, a pre-filing review of a presentment by the district court. Moreover, since NRS 172.267 does not apply to a report accompanied by a presentment, a motion to expunge or preliminary review of a report by a judge under NRS 172.271 is not applicable.

However, in the instant case, the grand jury and the prosecutor never intended to proceed forward with criminal charges. Thus, the "presentment" improperly circumvented the provisions of NRS 172.267. Once it was clear to the district court that the prosecution was not going to pursue criminal charges, the court erred in treating the documents filed as a presentment and instead should have treated the pleadings as a report under NRS 172.267. NRS 172.285 states that the court *shall* issue a warrant of arrest if the presentment contains facts which show that a public offense has been committed. There is no provision for the government to file a document called a "presentment" and then request the court to determine the matter be closed with no further action. NRS 172.267 is designed to prevent such an eventuality from occurring.[5]

The "presentment" and report filed below violated NRS 172.267(2)(a) and (c). The district court recognized the problems with the report in its letter of February 3, 1997. Thus, the petitioners should have been afforded an opportunity to file a motion to have certain portions of the report stricken before the report was finalized and made public.

This court has generally held that only those portions of the report which violate the provisions of NRS 172.267 are subject to

---

[5]If the district attorney believed a "triable offense" had been committed, he should have requested a warrant. Petitioners would then have been able to raise the statute of limitations issue by a motion to dismiss. They would also have been able to challenge the questionable application of NRS 197.200 to the facts in this case.

expungement. However, in this case, where the statute was circumvented by the filing of an invalid presentment, total expungement of the "presentment," the report of the grand jury and the grand jury transcripts is warranted.[6]

### CONCLUSION

The district court correctly ruled that the report of investigation did not comply with NRS 172.267. It exceeded its statutory authority, however, in allowing the filing of a document entitled "presentment" in the face of the district attorney's statement that no triable offense had been committed. We conclude that the district court's action warrants this court's intervention by extraordinary writ. Accordingly, we grant this petition. The clerk of this court shall issue a writ of mandamus compelling the district court to enter an order expunging the presentment and report, as well as the grand jury transcripts involving the petitioners.

---

[6]The district court denied petitioners' request for additional transcripts because no criminal proceedings were pending against them. Since this court has determined that the presentment was invalid, petitioners are not entitled to any additional transcripts. However, NRS 172.225 provides that "if an indictment has been found or accusation presented" then the accused is entitled to a transcript of the grand jury proceedings. The district court erred when it limited the transcript to "all witnesses relied upon by the grand jury."

The State has argued that NRS 172.225 does not apply to presentments. Since a presentment is an informal written statement alleging a particular person has committed a public offense, it falls within the meaning of "accusation presented." *Id.*